IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

vs.

**ANTHONY CATALANO,**

**Defendant.**

**Criminal Case No. 23-10240-FDS**

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government submits this sentencing memorandum and requests that this Court sentence defendant Anthony Catalano as follows:

a) incarceration for a term of one year and a day;

b) 36 months of supervised release;

c) a mandatory special assessment of $300, which Defendant must pay to the Clerk of the Court on or before the date of sentencing;

d) restitution of $1,090,000 to the Internal Revenue Service and $541,000 to Travelers Insurance Company.

### BACKGROUND

The PreSentence Report at ¶¶ 8-18 details the Defendant's multi-facet fraud scheme. Over a period of four years, as the sole owner/operator of the APC trucking and delivery company Catalano  received $12.8 million in customer checks but deposited only $4.1 million into the business account.  The remaining $8.7 million checks from customers were cashed by Catalano. He concealed the cash funds from his tax preparer, thereby failing to report the income on Forms 1120 Corporate tax returns and as passthrough net income on his Forms 1040 Individual tax

returns.[1] As a second facet of his fraud scheme, Catalano used approximately $5 million of the cash income to pay under-the-table wages to his employees.  Those wages were not reported to his tax preparer nor to his ADP Payroll service, with the result that Catalano concealed those employee wages from the IRS to evade payment of over $1 million in employment taxes.  As a  third facet of his scheme, Catalano concealed from Travelers Insurance Company, his workers' compensation insurance carrier, the cash wages he paid employees.  He thereby defrauded Travelers of $541,000 in insurance premiums.[2]

## THE PRESENTENCE REPORT

Here, the PSR has calculated the total offense level based on the guidelines applicable to the charged offenses and accurately arrived at the applicable total offense level of 19, and criminal history category II, with a resultant guideline sentencing range of 33 to 41 months incarceration. PSR at ¶ ¶ 22-42, 54-55, 81.

## THE DEFENDANT'S SENTENCING MEMORANDUM

In his sentencing memorandum, the Defendant asks this Court to impose a sentence of "probation – or probation with home confinement." Dkt. 15 at 8.  In other words, he seeks imposition of his status quo with no tangible consequences for his criminal conduct.[3]

First, he argues that his medical conditions preclude this Court from sentencing him to a period of incarceration.  The Government acknowledges the severe medical conditions the

---

[1]  Catalano was not charged for corporate or personal *income* tax evasion as part of the plea agreement calling for guilty pleas to *employment* tax charges, and for the reasons set out in ¶ 11 and n.4 of the PSR.

[2]  Losses for insurance premiums are calculated for only three of four years.  For one year, Catalano illegally put employees at risk by failing to carry any workers' compensation insurance at all.

[3]  In this case, even the typical defense claim that the Defendant has been "punished" by prosecution because he "now has a criminal record" is a non-starter. Dkt. 15 at p.7.  Catalano had a significant criminal record before he commenced the current tax and mail fraud offenses.

defendant presents in his memorandum. Nonetheless, his claim that custody would create a distinct possibility of his death is not only hyperbolic but unfounded. Dkt. 15 at 4. During pre-charging negotiations in this case, the defense requested nearly two years ago that the Government review and consider a treating physician's then-current summary of Catalano's medical conditions. The Government did as requested, including forwarding the defense materials to the Bureau of Prisons ("BOP"). On March 8, 2022, Dr. Diane Sommer, Northeast Region Medical Director, provided a letter reflecting review of the physician's summary and detailing the multi-level resources BOP maintains for progressive treatment of inmates. *See* Attachment One. The BOP review has been updated to include medical matters in 2022 and 2023 recently submitted by the defendant: PSR at p. 21; Dkt. 15 (Sentencing Memo at 2); Dkt. 15-2 (Physician letter 02/22/2022); Dkt. 15-3 (Medical discharge instructions 10/12/2022). *See* Attachment Two. The BOP has multiple levels of care available to treat medical conditions such as Catalano's and those with much worse conditions requiring around-the-clock care.

Second, the defendant seeks extreme leniency from this Court arguing that he created a successful business despite his historical drug addiction. Certainly, success after overcoming drug abuse is to be commended. Here, however, applause for Catalano must be muted by his own admission that his business only "succeeded" because he was operating it illegally. Dkt. 15 at 2.

Third, Catalano asserts that individual and general deterrence have no role in this case. While he may not present a risk for future *employment* tax fraud as an employer of others, his personal and criminal history hardly assure that if he obtained employment or had windfall income, he would not conceal personal income as he did when he failed to report millions of dollars of income in this case. Catalano relies on what he mistakenly characterizes as a Department of Justice "white paper" to falsely assert that DOJ took the position in 2016 that the actual sentence is

3

unlikely to have a deterrent value.  Dkt. 15 at p.5.[4]  Again, the defendant is wrong for several reasons.  First, the referenced article was posted on a web site offered by DOJ for others to publicly report their own [non-DOJ] research and articles concerning all manner of issues regarding criminal justice.   https://nij.ojp.gov/topics/articles/five-things-about-deterrence    The web site itself, not copied in full by the defendant, contains the following statement at Note 2:

> Opinions or points of view expressed on this site represent a consensus of the authors and do not necessarily represent the official position or policies of the U.S. Department of Justice. The content on this page is not intended to create, does not create, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.

The authors of the referenced article themselves made patently clear that the 2-page article was not a policy statement on behalf of the DOJ, specifically stating:

> Findings and conclusions of the research reported here are those of the authors and do not necessarily reflect the official position or policies of the U.S. Department of Justice.

Contrary to the Defendant's patently false assertions, the Department of Justice has never "admitted" "acknowledged" or otherwise confirmed or adopted the summary comments by the authors of the subject article.   Within the article copied by the defendant, the authors cautioned the reader:

> [This article] summarizes a large body of research related to deterrence of crime into five points. Two of the five things relate to the impact of sentencing on deterrence – "Sending an individual convicted of a crime to prison isn't a very effective way to deter crime" and "Increasing the severity of punishment does little to deter crime."  Those are simple assertions, but the issues of punishment and deterrence are far more complex.

Further contradicting the Defendant's misguided assertions, the authors indeed noted that prison sentences do, in fact, serve a deterrent impact --

---

[4]  Defendant's Dkt. 15-4 purports to be a copy of the article, but in fact occupies four pages merely duplicating the two pages.  Furthermore, the Defendant's download does not duplicate the web site from which the article was excerpted.

> Viewing the findings of research on severity effects in their totality, there is evidence
> suggesting that short sentences may be a deterrent.

In sum, Catalano's reliance on the article is misplaced in this case.  The fact is that the Government relies heavily on deterrence to successfully enforce the internal revenue laws. The number of taxpayers in the United States far exceeds the number of criminal investigators available at the IRS to investigate tax crimes.  Recent DOJ Tax Division figures indicate that while approximately 170 million individual income tax returns are filed every year, and less than 1 million civil IRS audits are conducted annually, DOJ is able to authorize only 1,300 criminal prosecutions each year.  For these reasons, general deterrence is a critical aspect of such cases. The United States Sentencing Commission specifically recognized the need for sentences to act as deterrents in tax cases.  In the Guidelines Manual introduction to guidelines applicable to federal tax frauds the Commission declared:

> The criminal tax laws are designed to protect the public interest in preserving the
> integrity of the nation's tax system.  Criminal tax prosecutions serve to punish the
> violator and promote respect for the tax laws.  Because of the limited number of
> criminal tax prosecutions relative to the estimated incidence of such violations,
> deterring others from violating the tax laws is a primary consideration underlying
> these guidelines.  Recognition that the sentence for a criminal tax case will be
> commensurate with the gravity of the offense should act as a deterrent to would-be
> violators.

U.S.S.G., Chapter 2, Part T, introductory cmt.

Fourth, Catalano simply lists 19 cases in which he claims tax defendants received non-prison sentences.  Dkt. 6-7.  Of course, the Defendant avoided identifying any tax fraud cases where the defendants received prison sentences.  Numerous courts have criticized this approach as neither providing sufficient information to make any useful comparison in a particular case nor providing a national U.S.S.G. barometer.  Among only a few of the significant failings pertinent to this case, (1) with only two exceptions the cases cited by the defendant represented federal tax

losses far below the losses Catalano caused; (2) none of the defendant's bare case citations indicate whether the defendant was held liable for employment taxes involving other individuals or the defendant's own personal income taxes; and (3) there is no indication whether the defendant lied to IRS investigators.  On the other hand, the Defendant simply ignored the sentencing comparisons provided by the Probation Office.  PSR at p. 25.  Although representing only a very few cases, at least the information provided by Probation was based on the specific Guidelines, Final Offense Level and Criminal History Category II applicable to Catalano.  As indicated, all three defendants received prison sentences, with the average term of 22 months and the median sentence of 18 months.  After consideration of all the circumstance and Section 3553 factors in this case, the Government's sentence recommendation for Catalano is a sentence of one year and a day.

Finally, the Defendant argues that this Court lacks the authority to impose restitution to the IRS as a condition of supervised release in its sentence for the Title 26 offenses.  Dkt. 15 at p. 7. The Defendant is simply wrong and the defendant's selectively excerpted portion of the DOJ manual regarding **mandatory** restitution for Title 18 offenses is designed to mislead this Court. The complete discussion from the DOJ Manual makes clear that this Court has full discretionary authority to impose restitution in this case.  It is true that within plea agreements in most tax cases the defendant agrees to imposition of IRS restitution as a condition of supervised release.  But this Court's authority applies in the absence of the defendant's agreement.  18 U.S.C. § 3563(b) expressly authorizes courts to order as a condition of <u>probation</u> that a defendant "make restitution to a victim of the offense." <u>See</u> 18 U.S.C. § 3563(b)(2). The statute governing supervised release similarly authorizes courts to order restitution as a condition of <u>supervised release</u>. The supervised-release statute does this by expressly referencing the probation statute and the scope of its discretionary-condition authority, permitting courts to order as a condition of supervised release

"any condition set forth as a discretionary condition in section 3563(b)." *See* 18 U.S.C. § 3583(d). The effect of the statutory scheme is that these statutes, taken together, "unambiguously authorize federal courts to order restitution as a condition of supervised release for <u>any</u> criminal offense, including one under Title 26[.]" *United States v. Batson*, 608 F.3d 630, 635 (9th Cir. 2010). Multiple courts have similarly affirmed the sentencing court's authority to order restitution to the IRS as a condition of supervised release in tax cases with or without agreement of the defendant. *United States v. Frith*, 461 F.3d 914, 919 (7th Cir. 2006)(district court has "discretionary authority to order restitution as a condition of supervised release for a [non-Title 18] crime not specifically covered by either § 3663 or § 3663A"); *United States v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013); *United States v. Harrison*, 541 F. App'x 290, 292 (4th Cir. 2013); *United States v. Hassebrock*, 663 F.3d 906, 923 (7th Cir. 2011); *United States v. Bok*, 156 F3d 157, 167 (2d Cir. 1998)(district court may order restitution as a condition of supervised release "where restitution would be available under § 3663A but for the fact that the offense is not within the category of offenses listed in the [mandatory restitution] statute")(citing U.S.S.G. 5E1.1(a)(2)(1997); *United States v. Butler*, 297 F.3d 505, 518 (6th Cir. 2002)(district court has authority to order restitution for Title 26 tax evasion offenses as a condition of supervised release).

The Sentencing Guidelines, while not controlling, likewise call on courts to order restitution **except** in the limited circumstances where:

> the court finds, from facts on the record, that (A) the number of identifiable victims is so large as to make restitution impracticable; or (B) determining complex issues of fact related to the case or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

In this case, the Government seeks as a condition of supervised release (or probation, if ordered) that the defendant be required to pay the amount of the employment tax losses from the unreported

cash wages. There is only a single victim who is owed restitution: the Internal Revenue Service for the employment taxes it would have been able to collect had the defendant paid employees "on the books" and reported the wages to the IRS.  Moreover, there are no complex issues of fact surrounding the amount of the taxes due and owing,  The IRS calculated the employment tax loss of $1,090,000.  The PSR at pages 6-8 provides charts and explanation of the IRS methodology for calculating the employment taxes due and owing:

* The $8,701,0676 in unreported gross receipts from cashed checks were tallied two ways (PSR ¶ 12; Figures 1, 2);

* The IRS conservatively gave the Defendant credit for $2 million in check-cashing fees and related deductions, resulting in $6.8 million in revised unreported cash (PSR ¶ 17);

* The IRS applied 80% of the revised unreported cash, representing $ 5,430,347, as the amount Catalano used for cash payroll.  PSR ¶ 17; Figure 3).  The 80% ratio is a fair and reasonable portion of the cash funds for three reasons.  First, that is the approximate proportion of unreported  cash used for payroll observed by the IRS among nearly-identical unreported cash wages investigations.  Second, 80% of cash funds is the figure Catalano stated he used for "personal" expenses before he was confronted by the IRS and admitted that he had instead paid employees cash wages. Third, application of the 80% ratio to cash wages was specifically discussed with the defense as part of plea negotiations and review of the Information before filing.

* The IRS calculated the payroll taxes for unreported wages of $5,430,000 (i.e., 10% as the lowest legally permissible minimum income tax withholding rate, standardized FICA/SS and Medicare tax from tables) to derive the $1.090,000 in employment tax Catalano was required by law to have paid over to the IRS.

\* For some quarters Catalano did report wages he paid "on the books" through ADP Payroll Service and did pay over the required quarterly employment taxes corresponding to those reported wages.  (Figure 3, Employment Taxes Per Forms 941 filed by APC). The IRS gave Catalano credit for those reported wages and employment taxes by spreading the unreported $5,430,000 wages across the quarters for all four years and applying the corresponding Form 941 credits per quarter. (Figure 3).

The employment taxes due and owing totaled $1,090,000.

As an alternative, this Court should impose an Order of restitution for not less than $550,000.  This is the minimum tax loss amount set out in the plea agreement at p. 2.  Moreover, the Government's recitation of offense facts and evidence at the Rule 11 hearing set out the same loss information.  The U.S. Probation Office calculation of the tax offense Adjusted Offense Level was based on the employment tax losses range of $550,000 to $1.5 million. PSR at p. 10. Although the plea agreement provided a right for the Defendant to object to the Government's tax loss calculation, he has never done so.  Nor has the defendant ever objected to the Probation Office calculation set out in the PSR.  Nor was an object raised in Catalano's sentencing memorandum.

Moreover, this Court need only identify a reasonable estimate of the tax losses to impose restitution in this case.  The First Circuit has recognized the impossibility of calculating exact losses, noting that loss calculation "is more an art than a science" so that "[c]ourts can, and frequently do, deal with rough estimates." *United States v. Rostoff*, 53 F.3d 398, 407 (1st Cir. 1995); *see also* U.S.S.G. § 2T1.1 app. note 1 (where the "amount of tax loss may be uncertain … the court will simply make a reasonable estimate based on the available facts"). The IRS

calculation detailed in the PSR provides a more than reasonable basis for identifying restitution for the federal tax losses.[5]

## THE GOVERNMENT'S REQUESTED SENTENCE

The nature and circumstances of Catalano's conduct in this case are egregious for multiple reasons. *See*, 18 U.S.C. § 3553(a). First, his scheme was durational over a period of years and he lied to federal agents when the IRS investigated him. When interviewed by the IRS, rather than acknowledge his conduct, Catalano claimed that all customer checks had been deposited into the company account and the income was reported to his tax preparer. PSR at ¶ 10. It was only when specifically confronted with the hundreds of checks he had cashed that Catalano admitted he had cashed customer checks and had lied to the agents when he declared that he had disclosed the income to his tax preparer. Even then, he sought to conceal his payments of cash wages to employees by stating that he used 80% of the funds for personal purposes and the rest for business expenses. Confronted again by specifics, he was compelled to admit that he used cash funds to pay under-the-table wages to employees. *Id*. Second, by committing his frauds Catalano sought a competitive advantage over his industry competition. He cashed $8 million in customer checks to use $6.8 million without any oversight or financial consequences. He reduced his own net operating expenses by at least $1.5 million against his competitors who paid their expenses as they were required by law. His own sentencing memorandum specifically notes that his business failed entirely once he began paying employee wages on the books. Dkt. 15 at p.2. Third, by failing to report his cash business income, Catalano avoided paying either corporate or personal income

---

[5]  Catalano's attempt to avoid paying restitution for tax losses he created is simple sophistry. As the sole owner and operator of APC trucking, the defendant alone had the legal responsibility to collect, report and pay over the employment taxes in this case. As the sole actor intentionally committing the tax frauds and causing the resulting tax losses, he cannot be heard to argue that he does not have personal liability for the losses he created.

taxes on $8 million.  Fourth, by failing to report their wages to the IRS Catalano put his own employees at risk not only for lost social security credits but potentially for their own IRS liabilities for unpaid personal income taxes.  At a minimum, employees were unexpectedly confronted by IRS agents conducting a formal federal investigation involving their personal tax returns and taxes owed by them.  Although in this circumstance it may not be prudent for the IRS to attempt to hold the individual employees liable for their individual income tax losses, those employees are not officially informed that they are not liable and will necessarily be overly concerned about the risk of any inadvertent error on their future tax returns.  Fifth, as noted above Catalano further placed his employees in jeopardy by failing to obtain any workers compensation for a period of time.  Not only was that a knowing violation of law, but workers compensation insurance is required as a protection for employees in the event they suffer work-related injuries.

Other Section 3553(a)  factors further support the Government's recommended sentence. Although the Defendant attempts to minimize his criminal history, the PSR properly notes the defendant's multiple prior convictions.  The sentence of one year and a day represents a significant sentence to reflect the seriousness of the current criminal offenses but recognizes and takes into account the defendant's personal history and characteristics as factors in mitigation from a within Guidelines sentence.  The sentence imposed by this Court must likewise take into account the need to promote the public's respect for the tax and workers compensation laws and the public's perception that a just sentence has been imposed, including reassuring honest taxpayers that they will not bear an undue share of the federal tax burden. As discussed above, the shortened term  of imprisonment provides a necessary deterrent effect. The defendant's two daughters are 20 and 17 years old, respectively,  and both live in safe, secure households with their mothers.  PSR at p. 20. The family letters to this Court of course reflect the sad consequences when any individual decides

to take the calculated risk of committing federal offenses and is separated for a period of incarceration.  No family responsibilities provide a basis for avoiding the recommended sentence of incarceration in this case.

Finally, federal sentences imposed in tax fraud cases are frequently reported in business, accounting and tax professional journals, and can thereby deliver a message regarding the seriousness with which the courts will treat such cases.  The sentence imposed in this case will inform this defendant, and others similarly engaged, whether and to what extent real consequences will result from their fraudulent conduct.  Thus,  the sentence requested serves the purposes of consideration of the gravity of the offenses, the defendant's individual and offense characteristics, personal and societal deterrence, protection of the public and promotion of respect for the law.  18 U.S.C. §  3553(a)(1) – (7).

For all the reasons discussed, the Government requests that this Court sentence the defendant as follows:

> incarceration for a term of one year and a day;
>
> 36  months of supervised release;
>
> a mandatory special assessment of $300, which Defendant must pay to the Clerk of the Court on or before the date of sentencing;
>
> restitution of $1,090,000 to the Internal Revenue Service and $541,000 to Travelers Insurance Company.

Respectfully submitted this 12th day of January, 2024.

JOSHUA S. LEVY
Acting United States Attorney


By:    /s/ *Victor A. Wild*
       VICTOR A. WILD
       Assistant United States Attorney

12

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Victor A. Wild*

VICTOR A. WILD
Assistant United States Attorney
Suite 900
One Courthouse Way
Boston, MA 02210
(617) 748-3100
Victor.Wild@usdoj.gov